1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    VALLEY PIZZA, INC.,                        Case No. 24-cv-02934-TSH

8                 Plaintiff,

9          v.                                   **ORDER DENYING MOTION TO COMPEL ARBITRATION**

10   JOHN A. HERBST, et al.,                    Re: Dkt. No. 14

11                Defendants.

12

13                        **I.   INTRODUCTION**

14          Pending before the Court is a Motion to Compel Arbitration brought by Defendants John

15   A. Herbst, Allen M. Toy, Neil Cortesi and John G. Budd.  ECF No. 14.  Plaintiff Valley Pizza,

16   Inc. filed an Opposition (ECF No. 18) and Defendants filed a Reply (ECF No. 20).  The Court

17   finds this matter suitable for disposition without oral argument and **VACATES** the October 10,

18   2024 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **DENIES** the

19   motion.[1]

20                        **II.   BACKGROUND**

21          On May 15, 2024, Plaintiff Valley Pizza, Inc. initiated this lawsuit in this Court against

22   individual Defendants John A. Herbst, Allen M. Toy, Neil Cortesi and John G. Budd.  *See*

23   Complaint, ECF No. 1 at 1.  In its Complaint, Plaintiff alleges causes of action for (1) violation of

24   26 U.S.C. § 7431 against Defendant Budd (Compl. ¶¶ 23–30); (2) invasion of privacy against

25   Defendant Budd (Compl. ¶¶ 31–37); (3) violation of California Business and Professions Code

26   § 17200 against Defendant Budd (Compl. ¶¶ 38–42); (4) abuse of process against Defendant Budd

27   _____

28   [1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 7, 16.

United States District Court
Northern District of California

1    (Compl. ¶¶ 43–47); and (5) civil conspiracy against Defendants Herbst, Cortesi and Toy (Compl.

2    ¶¶ 48–54).

3            On July 15, Defendants filed the instant Motion to Compel Arbitration.  ECF No. 14.  On

4    July 29, Plaintiff filed an opposition to Defendants' motion.  ECF No. 18 ("Opp'n").  On August

5    5, Defendants filed a reply.  ECF No. 20 ("Reply").

6            Defendants have proffered a copy of a stock purchase and sale agreement ("Stock Purchase

7    Agreement") dated March 1, 2022 and signed by Defendants and Circle Pizza, LLC, which is not

8    a party in this action.  Decl. of John Budd, ECF No. 14-1 ("Budd Decl.") ¶¶ 2, 5 & Ex. A to Budd

9    Decl.  The Stock Purchase Agreement includes an arbitration provision, which provides:

> Section 9.12 <u>Disputes</u>.  Any dispute, claim or controversy arising out
> of or relating to this Agreement or the breach, termination,
> enforcement, interpretation or validity thereof, including the
> determination of the scope or applicability of this agreement to
> arbitrate, shall be determined by arbitration in Sacramento, California
> before one arbitrator(s). The arbitration shall be administered by
> JAMS pursuant to its Comprehensive Arbitration Rules and
> Procedures and in accordance with the Expedited Procedures in those
> Rules. Judgment on the Award may be entered in any court having
> jurisdiction.  This clause shall not preclude parties from seeking
> provisional remedies in aid of arbitration from a court of appropriate
> jurisdiction. The parties shall maintain the confidential nature of the
> arbitration proceeding and the Award, including the Hearing, except
> as may be necessary to prepare for or conduct the arbitration hearing
> on the merits, or except as may be necessary in connection with a
> court application for a preliminary remedy, a judicial challenge to an
> Award or its enforcement, or unless otherwise required by law or
> judicial decision.

20   Stock Purchase Agreement at 18–19, Sec. 9.12.  The Stock Purchase Agreement collectively

21   identifies Defendants as "Seller" and Circle Pizza LLC as "Buyer."  Stock Purchase Agreement at

22   1.  The last page of the Stock Purchase Agreement includes e-signatures dated March 1, 2022 by

23   each of Defendants and by Kuljeet Singh as a member of Circle Pizza, LLC.  Stock Purchase

24   Agreement at 20.  Defendants have also proffered a complaint Defendants filed against Circle

25   Pizza in JAMS arbitration.  Budd Decl. ¶ 5 & Ex. A to Budd Decl.

26                                              **III.**

27                                  **IV.   LEGAL STANDARD**

28           The Federal Arbitration Act ("FAA") "makes arbitration agreements 'valid, irrevocable,

1   and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

2   contract.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50 (2022) (quoting 9 U.S.C.

3   § 2).  The purpose of the FAA is to "rigorously enforce" private arbitration agreements according

4   to their terms.  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).  The FAA

5   "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which

6   an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218

7   (1985) (emphasis in original).  The Court's role is to decide: "(1) whether there is an agreement to

8   arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus*

9   *Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  "If the response is affirmative on both counts, then

10  the Act requires the court to enforce the arbitration agreement in accordance with its terms."

11  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "[A]ny doubts

12  concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* at 1131.

13      "When deciding whether the parties agreed to arbitrate a certain matter (including

14  arbitrability), courts generally . . . should apply ordinary state-law principles that govern the

15  formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

16  "California law, like federal law, reflects a strong policy favoring arbitration agreements[.]"

17  *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 31 (2007).  Still, "[a] party petitioning

18  the court to compel arbitration bears the burden of proving by a preponderance of evidence the

19  existence of an arbitration agreement."  *Olvera v. El Pollo Loco, Inc.*, 173 Cal. App. 4th 447, 453

20  (2009) (citation omitted), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563

21  U.S. 333, 339 (2011).  Under California law, a contract requires (1) parties capable of contracting;

22  (2) consent; (3) a lawful object; and (4) consideration.  Cal. Civ. Code § 1550.  "A written

23  agreement to submit to arbitration an existing controversy or a controversy thereafter arising is

24  valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any

25  contract."  Cal. Civ. Proc. Code § 1281.

26      In deciding a motion to compel arbitration, courts must "treat the facts as they would when

27  ruling on a motion for summary judgment, construing all facts and reasonable inferences that can

28  be drawn from those facts in a light most favorable to the non-moving party."  *Shepardson v.*

United States District Court
Northern District of California

3

1    *Adecco USA, Inc.*, No. 15-cv-5102-EMC, 2016 WL 1322994 at *2 (N.D. Cal. Apr. 5, 2016) (citing

2    *Chavez v. Bank of Am.*, No. 10-cv-653-JCS, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011)).

3                                         **V.    DISCUSSION**

4            "[A]s a general rule, 'the right to arbitration depends on a contract, and a party can be

5    compelled to submit a dispute to arbitration only if the party has agreed in writing to do so.'"

6    *Jensen v. U-Haul Co. of California*, 18 Cal. App. 5th 295, 300 (2017) (quoting *Matthau v.*

7    *Superior Ct.*, 151 Cal. App. 4th 593, 598 (2007)).  "Even the strong public policy in favor of

8    arbitration does not extend to those who are not parties to an arbitration agreement or who have

9    not authorized anyone to act for them in executing such an agreement."  *Suh v. Superior Ct.*, 181

10   Cal. App. 4th 1504, 1512 (2010) (quotations omitted).  *See also Kramer v. Toyota Motor Corp.*,

11   705 F.3d 1122, 1126 (9th Cir. 2013) ("The strong public policy in favor of arbitration does not

12   extend to those who are not parties to an arbitration agreement") (quoting *Comedy Club, Inc. v.*

13   *Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009)).  Because "arbitration is a matter of

14   contract," the FAA cannot require a party "to submit to arbitration any dispute which he has not

15   agreed so to submit."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582

16   (1960).  California courts have, however, recognized circumstances under which a "nonsignator[y]

17   to an agreement containing an arbitration clause can be compelled to arbitrate under that

18   agreement."  *Suh*, 181 Cal. App. 4th at 1513.  A nonsignatory plaintiff may be required to arbitrate

19   its claims, *inter alia*, based on estoppel, where the plaintiff is the third-party beneficiary of the

20   contract containing the arbitration provision, or based on agency principles.  *Id.*; *see also Jensen*,

21   18 Cal. App. 5th at 301–07.

22           Defendants do not assert that Plaintiff Valley Pizza was a party to the Stock Purchase

23   Agreement.  Instead, Defendants argue that "Plaintiff is estopped from refusing to arbitrate since

24   its claims arise from the Stock Purchase Agreement, Plaintiff is an agent of Circle Pizza, and

25   Plaintiff was a third party beneficiary of the Stock Purchase Agreement."  Mot. at 2.

26           **1.    Estoppel**

27           Defendants contend that Plaintiff is estopped from refusing to arbitrate because its claims

28   depend upon the Stock Purchase Agreement between Defendants and Circle Pizza, which contains

United States District Court
Northern District of California

United States District Court
Northern District of California

1    an arbitration provision.  Mot. at 5–6; *see* Stock Purchase Agreement at 18–19, Sec. 9.12.

2           "A nonsignatory plaintiff may be estopped from refusing to arbitrate when he or she

3    asserts claims that are 'dependent upon, or inextricably intertwined with' the underlying

4    contractual obligations of the agreement containing the arbitration clause.'"  *Jensen*, 18 Cal. App.

5    5th at 306 (quoting *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239 (2011)).

6    However, "[e]ven if a plaintiff's claims 'touch matters' relating to the arbitration agreement, 'the

7    claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of

8    action.'"  *Id*.  *See also Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 229 (2009) (holding

9    "[t]he purpose of the [equitable estoppel] doctrine is to prevent a plaintiff from . . . relying on the

10   contract when it works to his advantage by establishing the claim, and repudiating it when it works

11   to his disadvantage by requiring arbitration. *The plaintiff's actual dependence on the underlying*

12   *contract in making out the claim against the nonsignatory defendant is therefore always the sine*

13   *qua non of an appropriate situation for applying equitable estoppel.*") (cleaned up) (emphasis in

14   original).

15          The Court finds Plaintiff does not rely or depend on the terms of the Stock Purchase

16   Agreement in asserting its claims against Defendants.  In its complaint, Plaintiff alleges that

17   Defendant Budd called the IRS to inquire about Valley Pizza's tax filings while falsely

18   representing that he was president of Valley Pizza.  Compl. ¶¶ 17–18.  Defendants contend this

19   means Plaintiff's claims are dependent upon and arise from the Stock Purchase Agreement

20   because Valley Pizza would not have changed hands and the payment of Valley Pizza's tax

21   refunds would not be in dispute were it not for the Stock Purchase Agreement.  Mot. at 6.  The

22   Stock Purchase Agreement may well explain *why* Defendant Budd allegedly called the IRS, and

23   some of Defendants' anticipated defenses to Plaintiff's claims may well find their footing in the

24   terms of the Agreement.  *See* Mot. at 3 (discussing provisions of Stock Purchase Agreement

25   excluding from the purchase and sale of Valley Pizza federal employee retention credits for 2020

26   and 2021 and providing that Defendants "may maintain signatory power over a Company bank

27   account or accounts for negotiation and retention of same"); Stock Purchase Agreement at 2, Sec.

28   1.4.  However, the crucial inquiry is whether Plaintiff relies on the agreement to establish its

1    claims.  Plaintiff alleges causes of action for violation of 26 U.S.C. § 7431, invasion of privacy,

2    violation of California Business and Professions Code § 17200, abuse of process, and civil

3    conspiracy, and its claims ultimately concern whether Defendant Budd misrepresented himself as

4    president of Valley Pizza and whether the remaining defendants conspired for him to do so.  Those

5    allegations do not themselves depend on any terms of the Stock Purchase Agreement, and the

6    Court finds they do not estop Plaintiff from refusing to arbitrate its claims.

7        Defendants further characterize Plaintiff's Complaint as "contain[ing] numerous

8    allegations about how the actions giving rise to its pending claims relate to the claims currently

9    pending in binding arbitration between Valley Pizza's now parent Company, Circle Pizza, and

10   Defendants."  Mot. at 6.  The allegations Defendants cite in support of this argument, however,

11   merely acknowledge that there is a pending arbitration.  Compl. ¶¶ 15, 20–21.  The complaint does

12   not describe those pending claims.  *See generally* Compl.  The Court finds mere references to an

13   ongoing arbitration in which Plaintiff is not a party do not demonstrate a reliance on the

14   underlying contract pursuant to which the parties in the arbitration agreed to arbitrate.

15       In their reply, Defendants argue Plaintiff has failed to demonstrate that its claims are *not*

16   dependent upon the Stock Purchase Agreement.  But the burden to demonstrate a binding

17   agreement to arbitrate lies with the moving party.  *See, e.g.*, *Ashbey v. Archstone Prop. Mgmt.,*

18   *Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) ("A party seeking to compel arbitration has the burden

19   under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists,

20   (2) that the agreement to arbitrate encompasses the dispute at issue").  Plaintiff is not a party to the

21   Stock Purchase Agreement, and Defendants have not otherwise demonstrated that Plaintiff's

22   claims are "dependent upon, or inextricably intertwined with" the obligations of the Stock

23   Purchase Agreement.  *Jensen*, 18 Cal. App. 5th at 306 (quotations omitted).

24       Accordingly, the Court finds Plaintiff is not equitably estopped from refusing to arbitrate.

25   **2.    Third-Party Beneficiary**

26       Defendants argue Plaintiff is compelled to arbitrate its claims as a third-party beneficiary

27   of the Stock Purchase Agreement.  Mot. at 6–7.  An arbitration agreement may be enforced against

28   a nonsignatory where the nonsignatory is a third party beneficiary of the arbitration agreement.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Jensen*, 18 Cal. App. 5th at 300–01.  "A third party beneficiary is someone who may enforce a

2    contract because the contract is made expressly for his benefit."  *Id.*at 301 (quoting *Matthau v.*

3    *Superior Ct.*, 151 Cal. App. 4th 593, 602 (2007)).  "The test for determining whether a contract

4    was made for the benefit of a third person is whether an intent to benefit a third person appears

5    from the terms of the contract."  *Id.* (quoting *Cargill, Inc. v. Souza*, 201 Cal. App. 4th 962, 967

6    (2011)).

7          Defendants contend that Plaintiff benefited directly from the Stock Purchase Agreement

8    because the Agreement concerned the sale of its entire ownership.  Mot. at 7.  But Defendants do

9    not point to any provision within the Stock Purchase Agreement indicating that the Stock Purchase

10   Agreement was made for the benefit of Valley Pizza.  *See generally* Mot. at 6–7.  Moreover, "[t]he

11   mere fact that a contract results in benefits to a third party does not render that party a 'third party

12   beneficiary.'"  *Matthau v. Superior Ct.*, 151 Cal. App. 4th 593, 602 (2007).  Defendants do not

13   offer any authority to support their assertion that a company being sold necessarily benefits from

14   the contract concerning its sale.  The fact that the Agreement concerned the sale of Valley Pizza

15   just means Plaintiff was the object of the Agreement, not that it benefited from it.

16         Finally, Defendant argues in its reply that the arbitration clause applies to "any dispute[,]

17   claim or controversy arising out of, or relating to the Agreement . . ." and maintains that this

18   action "arises from Defendant Budd's alleged misrepresentation to the IRS of his role at Valley

19   Pizza, a role that was only modified by virtue of the Stock Purchase Agreement."  Reply at 3.

20   Although Defendant Budd's role vis à vis Valley Pizza certainly would have changed when he

21   sold his shares in the company, this assertion provides no basis to find that Valley Pizza is a third-

22   party beneficiary of the Stock Purchase Agreement.

23         Accordingly, the Court finds Valley Pizza is not a third party beneficiary of the Stock

24   Purchase Agreement between Defendants and Circle Pizza, and rejects that theory as a basis to

25   require Plaintiff to arbitrate its claims.

26         **3.      Agency Relationship**

27         Defendants argue that Plaintiff is properly compelled to arbitration as an agent of Circle

28   Pizza.  A nonsignatory to an arbitration agreement may be compelled to arbitrate its claims "if a

7

1    preexisting confidential relationship, such as an agency relationship between the nonsignatory and

2    one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate

3    upon the nonsignatory." *Westra v. Marcus & Millichap Real Est. Inv. Brokerage Co.*, 129 Cal.

4    App. 4th 759, 765 (2005).  A nonsignatory to an arbitration agreement may not be bound by the

5    agreement absent a "preexisting agency relationship with one of the signatories to the arbitration

6    agreement . . . of such a nature that [the preexisting agency relationship] supports a finding of

7    implied authority for one of the signatories to bind the nonsignatory by their arbitration

8    agreement."  *Jensen*, 18 Cal. App. 5th at 303 (cleaned up).

9            Defendants contend that "[b]y acquiring Plaintiff outright, Circle Pizza (the signatory)

10   clearly has implicit authority to act on Plaintiff's behalf and control its operations.  Thus, Plaintiff

11   is an agent of Circle Pizza, and is properly compelled to arbitration under the Stock Purchase

12   Agreement."  Mot. at 6.  However, Defendants provide no evidence of any preexisting agency

13   relationship between Plaintiff and Circle Pizza.  Plaintiff was an asset transferred via the Stock

14   Purchase Agreement and could not have been an agent of Circle Pizza at the time of the

15   Agreement.  Moreover, although Defendants maintain that Circle Pizza is Plaintiff's "parent

16   company" (Mot. at 2; Reply at 2), Plaintiff asserts that Circle Pizza transferred ownership of

17   Plaintiff to Kuljeet Singh several days after the Stock Purchase Agreement was executed and does

18   not have any interest in Plaintiff.  Opp'n at 6; Decl. of Christina M. Morgan ¶ 5, ECF No. 18-1;

19   Decl. of Kuljeet Singh ¶ 4, ECF No. 19-1.  Defendants provide no other authority to support their

20   agency argument, and do not address Plaintiff's opposition in their reply.  *See generally* Reply.

21           Defendants further rely on *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal.

22   App. 5th 840, 862 (2019) for the proposition that agency principles "may bind a parent to the

23   contracts of its subsidiary where . . . the parent company exercises 'sufficient control over the

24   [subsidiary's] activities' such that the subsidiary becomes a 'mere agen[t] or 'instrumentality' of

25   the parent.'" (citations omitted).  But Defendants seek to bind a purported subsidiary, Valley

26   Pizza, to the acts of its purported *parent*, not vice versa, and make no argument as to why *Cohen*

27   should apply.

28           Accordingly, the Court finds Plaintiff is not bound by the arbitration provision of the Stock

1    Purchase Agreement under agency principles.

2                                    **VI.    CONCLUSION**

3            For the reasons stated above, the Court **DENIES** Defendants' motion.

4            **IT IS SO ORDERED.**

5

6    Dated: October 3, 2024

7                                                    _____
                                                     THOMAS S. HIXSON
8                                                    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28